NOT FOR PUBLICATION (Doc. Nos. 51, 61)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| KAITLIN SIMMER, | : | |
| Plaintiff, | : | Civil No. 15-2285 (RBK/JS) |
| v. | : | **OPINION** |
| FAWN KEHLER, ESQUIRE, et al. | : | |
| Defendants. | : | |

**Kugler**, United States District Judge:

Kaitlin Simmer ("Plaintiff") brings federal claims under section 1983 against Officer Daniel Peters, Detective Sergeant Robert Walker, Detective Bren Grunow, Sergeant Michael Workman, and Detective David Hartzell (collectively, "Defendants") for alleged violations of her Fourth Amendment rights. This matter comes before the Court on Defendants' motion for summary judgment (Doc. No. 51) and Plaintiff's motion for leave to file sur-reply (Doc. No. 61). For the following reasons, Defendants' motions for summary judgment is **GRANTED**. Plaintiff's motion for leave to file sur-reply is **GRANTED**.

### I. FACTUAL BACKGROUND

The facts, in the light most favorable to the Plaintiff, are as follows: Plaintiff was in Stone Harbor, New Jersey on vacation with her children, her family, and the Kehler family on July 1, 2014. Defendants' Statement of Facts in Support of Motion for Summary Judgment ("Defs.' St.") ¶ 9 (Doc. No. 51-2); Plaintiff's Response in Opposition to Defendants' Statement of Material Facts ("Pl.'s Resp.") ¶ 9 (Doc. No. 59-1). Plaintiff was staying at her grandparents'

1

home in Cape May Courthouse. Defs.' St. ¶¶ 10, 15; Pl.'s Resp. ¶¶ 10, 15. The Kehler family rented a separate house in Stone Harbor because they could not all stay at Plaintiff's grandparents' house. Defs.' St. ¶ 11; Pl.'s Resp. ¶ 11. Plaintiff made plans to meet with her then-friend, Fawn Kehler, at the Windrift in Avalon, New Jersey. Defs.' St. ¶ 17; Pl.'s Resp. ¶ 17.

Plaintiff may have taken a prescribed Xanax around 3:00 p.m. on July 1, 2014. Defs.' St. ¶ 18; Pl.'s Resp. ¶ 18. Plaintiff left her grandparents' house to go to the Windrift around 9:00 p.m. that night. Defs.' St. ¶ 19; Pl.'s Resp. ¶ 19. Plaintiff drove to the Windrift and met with Fawn Kehler, James Streapy (Plaintiff's brother), and Jacqueline Barrett (Streapy's girlfriend). Defs.' St. ¶ 20; Pl.'s Resp. ¶ 20. Plaintiff claims to have had a mixed drink and a shot over the next hour and a half before Streapy and Barrett left the Windrift. Defs.' St. ¶¶ 21-22; Pl.'s Resp. ¶¶ 21-22. Plaintiff also alleges that she had "a few sips" of Streapy's beer after he left. Defs.' St. ¶ 21; Pl.'s Resp. ¶ 21.

Plaintiff stayed at the Windrift after Streapy and Barrett left because Kehler asked her to stay and because Plaintiff had "just gotten there." Defs.' St. ¶ 23; Pl.'s Resp. ¶ 23. Four men then came over to speak with Plaintiff and Kehler after Streapy and Barrett left the Windrift. Defs.' St. ¶ 24; Pl.'s Resp. ¶ 24. Plaintiff claims to have no further recollection of the night after this point other than getting into a car with Kehler and four men. Defs.' St. ¶¶ 25-26; Pl.'s Resp. ¶¶ 25-26.

Kehler's recollection of the evening of July 1, 2014 differs in some regards from Plaintiff's. Kehler alleges that Plaintiff had a mixed drink and two (rather than one) shot of whiskey before Streapy and Barrett left the bar. Defs.' St. ¶ 50; Pl.'s Resp. ¶ 50. Kehler further claims that Plaintiff had the beer remaining in the pitcher that Streapy and Barrett had been sharing before leaving the table to speak with a group of three to four men. Defs.' St. ¶¶ 51-52;

Pl.'s Resp. ¶¶ 51-52. Kehler then joined Plaintiff at the table with the group of men. Defs.' St. ¶ 53; Pl.'s Resp. ¶ 53. The group shared a pitcher of beer after Kehler had one of the men drink from the pitcher to demonstrate that it was not laced with anything. Defs.' St. ¶¶ 53-54 ; Pl.'s Resp. ¶¶ 53-54. Kehler recalls that Plaintiff had at least seven drinks at the Windrift (two mixed drinks, three shots, and two beers). Defs.' St. ¶ 55; Pl.'s Resp. ¶ 55. Kehler and Plaintiff may have also gone to a second bar after the Windrift, though Kehler cannot recall how they went to the second location. Defs.' St. ¶ 56; Pl.'s Resp. ¶ 56.

Kehler does recall that one of the men they met at the Windrift gave her and Plaintiff a ride home, dropping the two off about a block from the Kehlers' rental. Defs.' St. ¶ 57; Pl.'s Resp. ¶ 57. Kehler alleges that Plaintiff had trouble walking because she was very drunk. Defs.' St. ¶ 58; Pl.'s Resp. ¶ 58. Kehler also recounts that Plaintiff urinated in a yard and tossed her shoes. Defs.' St. ¶ 59; Pl.'s Resp. ¶ 59. Kehler attempted to help Plaintiff walk back to the Kehlers' rental, but Kehler eventually gave up because Plaintiff kept attempting to pull away and walk in the opposite direction. Defs.' St. ¶¶ 60-61; Pl.'s Resp. ¶¶ 60-61. Kehler separated from Plaintiff and was then unable to relocate Plaintiff. Defs.' St. ¶ 62; Pl.'s Resp. ¶ 62.

The next thing Plaintiff recalls is waking up on a couch in the DeLaurentis home. Defs.' St. ¶¶ 28-29; Pl.'s Resp. ¶¶ 28-29. Plaintiff had never been in the DeLaurentis house before, and she left the house because she "thought maybe something bad was happening." Defs.' St. ¶¶ 29-30; Pl.'s Resp. ¶¶ 29-30. Plaintiff walked around the block to her car and drove back to her grandparents' house in Cape May Courthouse. Defs.' St. ¶ 31; Pl.'s Resp. ¶ 31.

Stone Harbor Police Officer Daniel Peters was dispatched to the DeLaurentis household for "found property" at 8:35 a.m. on July 2, 2014. Defs.' St. ¶ 64; Pl.'s Resp. ¶ 64. Joseph DeLaurentis found Plaintiff sleeping on his couch around 7:00 a.m., believing that Plaintiff was

3

his daughter's friend. Defs.' St. ¶¶ 65-66; Pl.'s Resp. ¶¶ 65-66. DeLaurentis went to wake up his wife, and found that Plaintiff had left the house when he returned. Defs.' St. ¶ 67; Pl.'s Resp. ¶ 67. DeLaurentis called the police regarding "found property" because Plaintiff left her wallet in the DeLaurentis' home. Defs.' St. ¶ 68; Pl.'s Resp. ¶ 68.

Officer Peters brought Plaintiff's purse back to the station and inventoried its contents. Defs.' St. ¶ 69; Pl.'s Resp. ¶ 69. Plaintiff's brother called her phone and Officer Peters told him that Plaintiff could retrieve her items at the police station. Defs.' St. ¶¶ 33, 70-71; Pl.'s Resp. ¶¶ 33, 70-71. Peters spoke with Sergeant Workman, Detective Grunow, and Detective Sergeant Walker at 9:20 a.m. to discuss Plaintiff's incident. Defs.' St. ¶ 72; Pl.'s Resp. ¶ 72. Peters recalls that Sergeant Workman then went to speak to his supervisor. Defs.' St. ¶ 109; Pl.'s Resp. ¶ 109. When Walker returned, he informed Peters that Plaintiff would be charged with trespassing. Defs.' St. ¶ 110; Pl.'s Resp. ¶ 110. Peters explained that he was unaware of any evidence that Plaintiff was intoxicated or unaware of her actions at the time this discussion and decision occurred. Defs.' St. ¶ 112; Pl.'s Resp. ¶ 112.

Sergeant Workman recalls that the decision to charge Plaintiff with trespassing was made after discussing the known facts with Peters, Grunow, and Walker. Defs.' St. ¶ 119; Pl.'s Resp. ¶ 119. Detective Sergeant Walker made the ultimate decision to charge Plaintiff with criminal trespass. Defs.' St. ¶ 129; Pl.'s Resp. ¶ 129. Walker believed that, despite DeLaurentis's statement that he did not wish to press charges, all elements needed to charge Plaintiff with criminal trespass were present. Defs.' St. ¶ 130; Pl.'s Resp. ¶ 130.[1] Walker testified that he had previously charged individuals who drunkenly entered homes without permission with criminal trespass. Defs.' St. ¶ 133; Pl.'s Resp. ¶ 133.

---

1. The Court notes that Plaintiff denies that the elements necessary to charge Plaintiff with criminal trespass were present. Pl.'s Resp. ¶ 130. This contention does not negate the fact that Walker *believed* this to be the case.

4

Plaintiff's brother drove her to the police station to recover her purse. Defs.' St. ¶ 34; Pl.'s Resp. ¶ 34. Plaintiff arrived at the police station at 10:39 a.m. Defs.' St. ¶ 73; Pl.'s Resp. ¶ 73. Plaintiff spoke to an officer at the intake window and was directed to follow an officer into the station because she was being placed under arrest. Defs.' St. ¶¶ 35-36, 73; Pl.'s Resp. ¶¶ 35-36, 73. Plaintiff was read her *Miranda* rights and she agreed to speak to the officers without an attorney. Defs.' St. ¶ 74; Pl.'s Resp. ¶ 74.

Plaintiff's interview was conducted by Detective Sergeant Walker and Detective Grunow. Defs.' St. ¶ 75; Pl.'s Resp. ¶ 75. The interview lasted approximately 23 minutes. Defs.' St. ¶¶ 81-82; Pl.'s Resp. ¶¶ 81-82. Plaintiff alleges that she was told that DeLaurentis did not want to press trespass charges against her, but they needed to charge her due to a "new rule." Defs.' St. ¶ 37; Pl.'s Resp. ¶ 37. Plaintiff was transported to the Cape Regional Medical Center after the interview ended. Defs.' St. ¶¶ 83-84, 73; Pl.'s Resp. ¶¶ 83-84.

Plaintiff arrived at the hospital around 12:09 p.m. Defs.' St. ¶ 84; Pl.'s Resp. ¶ 84. Plaintiff initially asked for a Sexual Assault Kit to be performed, but later decline the procedure. Defs.' St. ¶¶ 41, 86; Pl.'s Resp. ¶¶ 41, 86. Plaintiff declined the kit after being told that the police would ask her boyfriend for samples. Plaintiff's Statement of Facts ("Pl.'s St.")[2] ¶ 8; Defendants' Response ("Defs.' Resp.") ¶ 8. Plaintiff wanted the matter to remain private. Pl.'s St. ¶ 8; Defs.' Resp. ¶ 8. Plaintiff did have a blood sample taken around 3:07 p.m. before she was transported back to the police station. Defs.' St. ¶¶ 87-88; Pl.'s Resp. ¶¶ 87-88. Plaintiff believes she was held at the police station until approximately 4:00 p.m. Defs.' St. ¶ 90; Pl.'s Resp. ¶ 90.

---

2. The Court notes that Plaintiff's counsel has disregarded Local Rule 56.1 and has submitted Plaintiff's statement of facts as part of Plaintiff's Memorandum of Law in Support of Plaintiff's Response in Opposition to the Defendants' Motion for Summary Judgment. The Court will refer to the Statement of Facts section as "Pl.'s St." and the rest of the brief as Plaintiff's Opposition Brief ("Pl.'s Opp'n Br.")

Detective Sergeant Walker interviewed Kehler while Plaintiff was at the Cape Region Medical Center. Defs.' St. ¶ 91; Pl.'s Resp. ¶ 91. Kehler recounted her time with Plaintiff at the Windrift and after the two were dropped off. Defs.' St. ¶¶ 93-95; Pl.'s Resp. ¶¶ 93-95. Kehler explained to Walker that she was with Plaintiff the entire time they were with the men from the Windrift and assured him that nothing inappropriate occurred between Plaintiff and any of the men. Defs.' St. ¶¶ 98-100; Pl.'s Resp. ¶¶ 98-100. Walker followed up on his interview with Kehler by viewing security footage from the Windrift. Defs.' St. ¶ 101; Pl.'s Resp. ¶ 101. The video appeared to corroborate Kehler's account of the evening and Walker did not note any concerning conduct regarding Plaintiff in the footage. Defs.' St. ¶¶ 102-04; Pl.'s Resp. ¶¶ 102-04.

Plaintiff had to hire a criminal defense attorney regarding these charges, and her ex-husband filed for custody of their children after learning of Plaintiff's arrest. Pl.'s St. ¶¶ 13-14; Defs.' Resp. ¶¶ 13-14. Plaintiff's criminal trespass charge was ultimately dismissed by the Cape May County Prosecutor's Office on August 20, 2014. Pl.'s St. ¶ 12; Defs.' Resp. ¶ 12.

The New Jersey State Police Office of Forensic Sciences finished testing Plaintiff's blood sample on February 20, 2015. Defs.' St. ¶ 105; Pl.'s Resp. ¶ 105. The results showed alcohol and Plaintiff's prescribed Xanax, but no other substances. Defs.' St. ¶ 106; Pl.'s Resp. ¶ 106. The results also showed a blood alcohol content of .014%. Defs.' St. ¶ 108; Pl.'s Resp. ¶ 108. Detective Hartzell filed a report reviewing these test results on April 6, 2015 in which he calculated that Plaintiff's BAC on the night of July 1, 2014 into July 2, 2014 would have been approximately .231%. Defs.' St. ¶¶ 107-108; Pl.'s Resp. ¶¶ 107-108.

Plaintiff filed a complaint alleging malicious prosecution/false arrest and wrongful search and seizure against defendants Kehler, Peters, Walker, Grunow, Workman, Davis, Hartzell, and

10 John Doe defendants, and a *Monell* claim against the Borough of Stone Harbor on March 31, 2015. Compl. (Doc. No. 1). Plaintiff filed her First Amended Complaint ("FAC") on June 22, 2015. (Doc. No. 13). Defendant Borough of Stone Harbor was voluntarily dismissed on October 1, 2015. October 1, 2015 Order (Doc. No. 29). This Court then dismissed Defendant Kehler upon motion on November 2, 2015. November 2, 2015 Opinion (Doc. No. 34). Defendant Davis was dismissed from this case on January 15, 2016. January 15, 2016 Order (Doc. No. 46). The remaining defendants filed the instant motion for summary judgment on August 24, 2016. Defs.' Mot. (Doc. No. 51). Plaintiff filed the instant motion for leave to file sur-reply on October 25, 2016. Pl.'s Mot. (Doc. No. 61).

## II. STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts

of record which would contradict the facts identified by the movant." *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

As an initial matter, the Court grants Plaintiff's motion for leave to file sur-reply. Despite Defendants' opposition, the Court finds that Plaintiff's brief sur-reply will not confuse the issues or spur further motion practice. The Court also notes that Plaintiff has dropped her claims against Defendants Grunow, Workman, and Hartzell. Pl.'s Opp'n Br. at 13.

### A. Section 1983: False Arrest and Malicious Prosecution

Plaintiff alleges in Count I of the FAC that Defendants lacked probable cause to arrest and subsequently charge her for criminal trespass. FAC ¶¶ 31-38. Therefore, Plaintiff claims that Defendants violated her Fourth and Fourteenth Amendment rights, actionable under section 1983 and the New Jersey Civil Rights Act. False arrest and malicious prosecution have different elements, therefore the Court shall address each of these claims within Count I separately.

#### 1. False Arrest

An arrest without probable cause is a Fourth Amendment violation actionable under Section 1983. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). To succeed on a false arrest claim, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). In this case, there is no dispute that Defendants were involved in Plaintiff's arrest. Regarding the second element, the inquiry "is not whether the person arrested in fact committed the offense but

whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause "is a factual analysis from which the officers on the scene must make an immediate determination." *La v. Hayducka*, 269 F. Supp. 2d 566, 576 (D.N.J. 2003). Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The arresting officer must only reasonably believe at the time of the arrest that an offense is being committed, a significantly lower burden than proving guilt at trial. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

The probable cause standard does not require that an officer "correctly resolve[s] conflicting evidence." *Wright*, 409 F.3d at 603. Therefore, "a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983)). Thus, a police officer is not required to exhaust all other possible conclusions that might be drawn from the available evidence other than a criminal act being committed by the individual placed under arrest. For example, the Third Circuit held that in a criminal trespass case, where the arrestee claimed that she had the privilege to enter the building she was suspected of trespassing in, the police did not have to first investigate the accused's innocent explanation in order to arrest and charge her. *Wright*, 409 F.3d at 603-04. Indeed, an "officer considering the probable cause issue in the context of crime requiring a *mens rea* on the part of the suspect will always be required to rely on circumstantial evidence regarding the state of his or her mind." *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000). Furthermore, police officers need not resolve all credibility and factual determinations regarding

9

a potential defense to have sufficient probable cause to institute an arrest. *See Davis v. Malitzki*, 451 F. App'x 228, 233 (3d Cir. 2011).

In this case, Defendants argue that Plaintiff has not stated a claim for false arrest because there was probable cause for Plaintiff's arrest. Defendants' Brief in Support of Motion for Summary Judgment ("Defs.' Br.") at 6 (Doc. No. 51-1). Specifically, Defendants claim that the credible report from Mr. DeLaurentis that Plaintiff had entered his home and slept on the couch, in conjunction with Plaintiff leaving her purse in the DeLaurentis home, provided sufficient probable cause to arrest Plaintiff for criminal trespass. Defs.' Br. at 7. Plaintiff's response focuses on the lack of evidence that she *knowingly* entered the DeLaurentis home or that she acted surreptitiously, or with intention to hide or remain in the home. Pl.'s Opp'n Br. at 9-11.[3] Defendants' response focuses on the issue discussed in footnote 3 of this opinion. Defendants' Reply Brief ("Defs.' Reply") at 2-5 (Doc. No. 60). Plaintiff's sur-reply further argues that Defendants lacked probable cause to arrest Plaintiff because her intoxication negates the *mens rea* required for a criminal trespass violation. Plaintiff's Sur-Reply Brief (Pl.'s Sur-Reply") at 1 (Doc. No. 61).

The Court reiterates that the crime Plaintiff was arrested for and charged with requires that she knowingly entered the DeLaurentis home knowing that she was not licensed or privileged to do so. N.J.S.A. 2C:18-3(a). It is undisputed that the Defendant officers made the decision to arrest Plaintiff for criminal trespass before she arrived at the station and informed them of her potential involuntary intoxication. It is also undisputed that Plaintiff was in the

---

3. Plaintiff appears to argue that the criminal trespass statute would require a finding that she both entered and remained in the DeLaurentis house surreptitiously. Pl.'s Opp'n Br. at 9. Plaintiff appears to read the disjunctive "or" as a conjunction. This reading is untenable. The statute, N.J.S.A. 2C:18-3(a), states that "[a] person commits an offense if knowing that (s)he is not licensed or privileged to do so, (s)he enters *or* surreptitiously remains in . . . [a] structure . . . ." Therefore, the entry need not be surreptitious in order for a person to commit a violation.

10

DeLaurentis home without license or privilege (as it is undisputed that Plaintiff had never been there nor did she know the DeLaurentis family).

Plaintiff's argument that she did not *knowingly* trespass in the DeLaurentis home (as N.J.S.A. 2C:18-3(a) requires) is certainly a valid defense to her trespassing charge, but the presence of a plausible defense does not mean Defendant officers lacked probable cause. As stated above, the probable cause analysis centers on whether the circumstances were "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Gerstein*, 420 U.S. at 111. While Plaintiff's innocent explanation is a "factor in the probable cause analysis, it is not dispositive." *Wright*, 409 F.3d at 603. Defendants were not required to resolve factual determinations regarding potential defenses or innocent explanations for Plaintiff's conduct before arresting her. *See Davis*, 451 F. App'x at 233; *Wright*, 409 F.3d at 603-04. The Court finds that no reasonable jury could find that the facts and circumstances presented to Defendant officers were insufficient to warrant a reasonable belief that Plaintiff committed a trespass. Accordingly, Defendants' motion for summary judgment is granted as to the false arrest claim in Count I.

   2. *Malicious Prosecution*

Plaintiff also alleges that Defendants conduct constituted malicious prosecution in violation of her Fourth Amendment rights by subjecting Plaintiff to false criminal charges. FAC ¶ 34.

An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "To prove malicious prosecution under [§ ] 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause;

11

(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). "To prevail on [a malicious prosecution] claim, [a plaintiff] must show that the officers lacked probable cause to arrest." *Wright*, 409 F.3d at 603-04. Therefore, when determining whether to grant Defendants' motion for summary judgment as to the claim for malicious prosecution under 42 U.S.C. § 1983, the determination again rests on whether Defendants had probable cause to arrest Plaintiff.

This Court has already held that Defendants had probable cause to arrest Plaintiff for criminal trespass. *See* section III.A.1, *supra*. Therefore, Plaintiff's claim for malicious prosecution under section 1983 fails because Defendants had probable cause to effect the arrest. Accordingly, Defendants' motion for summary judgment is granted as to the malicious prosecution claim in Count I.

### B. Section 1983: Wrongful Search and Seizure

Plaintiff further alleges that her arrest constituted a wrongful search and seizure and thus violated her Fourth Amendment rights. FAC ¶ 40-42.

As an initial matter, the Court notes that Plaintiff does not specify a search which allegedly violated her rights. The Court will assume, as Defendants have, that Plaintiff is referring to any search of her person incident to arrest. Defendants correctly note that a search incident to a lawful arrest is constitutionally reasonable under the Fourth Amendment. Defs.' Br. at 16 (citing *Virginia v. Moore*, 553 U.S. 164, 176-77 (2008)). This Court has already determined that Defendants had probable cause to arrest Plaintiff for criminal trespass, therefore any search

conducted incident to Plaintiff's arrest was reasonable. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's illegal search claim in Count II.

In order to prevail on a claim for unreasonable seizure or false arrest, Plaintiff must prove that (1) there was a seizure, and (2) the seizure was constitutionally unreasonable. *Berg v. Cty. of Allegheny*, 219 F. 3d 261, 269 (3d Cir. 2000). A seizure occurs when a person is "detained by means intentionally applied to terminate his freedom of movement." *Id.* An arrest clearly constitutes a seizure for Fourth Amendment purposes. *Id.* In the context of an arrest, the seizure violates the Fourth Amendment's guarantee against unreasonable seizures when it is made without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). This Court has already held that Defendants had probable cause to arrest Plaintiff for criminal trespass. *See* section III.A.1, *supra*.

Defendants also argue that the length of Plaintiff's detention was reasonable in light of the extra time needed to investigate Plaintiff's assertion that she may have been drugged and sexually assaulted. Defs.' Br. at 17-19. Plaintiff responds that she was handcuffed to a bench for several hours and was not free to leave the police station. Pl.'s Opp'n Br. at 11-12. Defendants respond that the undisputed timeline of events demonstrate that Plaintiff could not have been handcuffed to a bench for several hours. Defs.' Reply Br. at 6-7.

The Court finds that it was reasonable for Plaintiff to remain in custody for approximately five and a half hours while the police investigated Plaintiff's claims. The Fourth Amendment allows "for a brief period of detention to take the administrative steps incident to arrest." *Gerstein*, 420 U.S. at 114. Interviewing the Plaintiff and transporting her to the hospital for bloodwork and a rape kit to investigate the possibility that Plaintiff was drugged and assaulted were certainly administrative steps incident to Plaintiff's arrest. The Court also sees no indication

that Defendants unnecessarily delayed or extended Plaintiff's detention to conduct these actions. Plaintiff's claim for wrongful search and seizure fails because Defendants had probable cause to arrest her for criminal trespass and Defendants did not detain Plaintiff for an unreasonable amount of time. Accordingly, Defendants' motion for summary judgment is granted as to Count II.

**IV. CONCLUSION**

For the reasons stated herein, Defendants' motions for summary judgment is **GRANTED**. Plaintiff's motion for leave to file sur-reply is **GRANTED**.

Dated: 03/24/2017

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge